# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,                                 Criminal No. 15-278(3) DSD/JJK

                        Plaintiff,

v.                                                        **REPORT AND RECOMMENDATION**

Ramon Rafael Alarcon,

                        Defendant.

_____

        Bradley M. Endicott, Esq., Assistant United States Attorney, for the
            plaintiff, United States of America; and

        Ralph E. Meczyk, Esq., for defendant Ramon Rafael Alarcon.

_____

        This action is before the Court, Magistrate Judge Jeffrey J. Keyes, on

defendant's Motion to Quash Warrant and Arrest and to Suppress Evidence.

(Doc. No. 179).   A hearing was held on March 31, 2016, at the U.S. Courthouse,

316 North Robert Street, St. Paul, MN  55101.  A warrant, along with the affidavit

in support of an application to implement cell phone tracking technology, was

submitted to the Court for four-corners review.  The matter will be submitted to

the district court by Report and Recommendation.

        Based on the file and documents contained therein, along with the motion

and memoranda of counsel, and an exhibit received at the hearing, this Court

makes the following:

**FINDINGS AND CONCLUSIONS**

On August 27, 2015, Hennepin County District Court Judge Marta Chou issued a warrant authorizing:

> the installation and use of a pen register, trap/trace device, electronic tracking device, global positioning system (GPS) technology, and triangulation location on telephone number(s): 708-548-8023, and the disclosure of subscriber, cell site, and call detail information ...

(Hr'g Ex. 1).[1]  The warrant ordered that Sprint Spectrum LP, the service provider for the target cell telephone number, produce the following information: (1) cell site activations and locations; (2) numbers dialed or pulsed; (3) identification of incoming call numbers; (4) historical call details, including cell site information for the 60 days following the date of the warrant application; (5) cell phone subscriber and billing information; and (6) an engineering map and physical addresses of cell tower locations.  The warrant further contained specific instructions to the service provider to provide assistance in executing the warrant and to facilitate use of caller identification features and production of caller identification information.  18 U.S.C. §§ 2703(d), 3123(a), 3123(b)(2), and 3124(a); and Minn. Stat. § 626A.36–42 are statutes generally cited in the application as legal authority for the warrant.  Minn. Stat. § 626A.42 provides

---

[1] For convenience purposes, citations to the search warrant and supporting affidavit (Hr'g Ex. 1) will be made by reference to a Docket entry page.  Page numbers are not clearly shown on the exhibit received at the hearing, but the same exhibit was provided to the court as an attachment to the defendant's motion (Doc. No. 179-1).

specific authority and criteria for obtaining electronic device location information.

This provision states in pertinent part:

> Subd. 2. ... a government entity may not obtain the location information of an electronic device without a tracking warrant.  A warrant granting access to location information must be issued only if the government entity shows that there is probable cause the person who possesses an electronic device is committing, has committed, or is about to commit a crime.  An application for a warrant must be made in writing and include:
>
> (1) the identity of the government entity's peace officer making the application, and the officer authorizing the application; and
>
> (2) a full and complete statement of the facts and circumstances relied on by the applicant to justify the applicant's belief that a warrant should be issued, including (I) details as to the  particular offense that has been, is being, or is about to be committed, and (ii) the identity of the person, if known, committing the offense whose location information is to be obtained.

Minn. Stat. § 626A.42.  An "electronic device" is defined as "a device that enables access to or use of an electronic communication service, remote computing service, or location information service."  Minn. Stat. § 626A.42, subd. 1(c).  A cell phone satisfies the definition of electronic device as contemplated under the statute.  Minn. Stat. § 626A.42, subd. 2 does not explicitly establish geographical boundaries within which a location tracking warrant may apply, but requires a probable cause showing that the person possessing the electronic device is involved in an actual or anticipated crime being investigated by the particular government entity.

The warrant was issued on the basis of information provided in the

lengthy and detailed application and supporting affidavit of Investigator Jonathan Howes of the West Metro Drug Task Force.  The affidavit describes an extensive ongoing criminal investigation into narcotics trafficking, and it identifies Ramon Rafael Alarcon as a suspect in the investigation and the user of the target cell phone.  The affidavit contains information obtained from a confidential reliable informant ("CRI"), prior police reports, and surveillance of Alarcon and other suspects.

The CRI had previously given information to Investigator Howes that had led to arrests and convictions, and now provided information regarding a large drug trafficking organization ("DTO") that was operating in the Twin Cities area. The CRI identified Leo Figueroa as the main distributor in the area and the CRI informed Howes that Alarcon and 'Diego Castandeda' worked under Figueroa as methamphetamine dealers for the DTO.  (Doc. No. 179-1 at 8).  The CRI positively identified Alarcon by photograph as a person involved in methamphetamine sales.  (*Id.*)  In addition, the CRI provided names of numerous other persons involved in the DTO, and descriptions of those persons' roles in the drug distribution operation.  (*Id.*)  Information regarding the involvement of two of these individuals in drug sales in the Twin Cities was corroborated by FBI officials who were conducting a separate federal investigation into methamphetamine distribution in the Twin Cities.  (*Id.* at 9).

The warrant affidavit states that a vehicle registered to defendant Alarcon

4

was observed at locations frequented by other suspects in this case, including co-defendant Jesus Hernandez.  (*Id.*).  The CRI indicated that Hernandez had assumed daily operations because Figueroa had fled to Mexico following the recent arrest of Genesis Sandoval with 10 pounds of methamphetamine in Brooklyn Park.  (*Id.*).

The warrant affidavit also describes evidence obtained by execution of a separate ping/pen register warrant authorizing the monitoring of a phone used by co-defendant Hernandez.  Hernandez's cell phone was tracked to Arizona and it was returned to Minnesota.  Its movements corresponded to the location of a vehicle that had been driven to a known stash house in Minnesota on July 19, 2015.  (*Id.* at 14).  On August 20, 2015, surveillance officers determined that Hernandez's cell phone and a vehicle registered to Alarcon were at the same location.  Officers followed the vehicle from that location:

> ... as [the vehicle] appeared to prepare for long distance travel with a younger Hispanic male driving and a younger Hispanic female with bleach blonde hair in the passenger seat. Surveillance officers observed this vehicle stop for fuel and obtained a car wash at Bobby and Steve's Convenience Store. Surveillance officers followed [license number] south on 35W through Albert Lea, Minnesota.  Surveillance Officers observed the vehicle travel west on Interstate 90.  Your Affiant knows this course of travel is preferred for traveling to Arizona.  Your Affiant knows the [drug trafficking organization ("DTO")] obtains methamphetamine from Arizona and transports the narcotics to Minnesota for sale.
>
> On Monday August 24, 2015 [task force officer ("TFO")] Nybeck obtained surveillance video from Bobby and Steve's during the time [license number] was at the gas station.  Your Affiant

reviewed the video and found the younger Hispanic male who was operating [license number] appeared to be the same younger Hispanic male that was at [address] with Jesus Pacheco on Thursday August 20, 2015.  Your Affiant also looked at the MN Drivers license picture of Ramon Alarcon DOB [date] and compared it to the surveillance video obtained.  Your Affiant found that party in the surveillance video appeared to be Ramon Alarcon and the physical description appears to be the same. Your Affiant also found through surveillance techniques that [license number] was traveling west on Interstate 40 near Holbrook, Arizona on August 21, 2015.

(*Id.* at 16-17).

Further probable cause information in the warrant affidavit pertaining

specifically to Alarcon is as follows:

On Thursday August 27th your Affiant utilized a commonly used law enforcement database used to identify suspects in criminal investigations.  Your Affiant ran checks for Ramon Rafael Alarcon DOB [date].  Alarcon is the individual that was identified as being the driver of the Honda Ridgeline with [license].  This vehicle is a suspected "load vehicle" that was observed departing Minnesota on Thursday August 20th and arriving in Arizona on Friday August 21st.  Additional checks of this vehicle, and other known vehicles used by the DTO, have indicated that these vehicles travel from Minnesota to Arizona approximately every three weeks.

Through these database checks, your Affiant learned that cellular phone 708-548-8023 is currently listed as being used by Alarcon as of August 27th 2015.  Your Affiant had TFO Nybeck issue a rush subpoena to Sprint Spectrum LP (cellular phone company) on August 27th in an attempt to verify that this phone number is still active and in use.  TFO Nybeck notified your Affiant that 708-548-8023 is listed as active and "in use".  TFO Nybeck further stated that the Sprint Spectrum LP subpoena listed the billing information for this phone as follows: "Jallai ALARCON" at "[address], Bellwood, IL 60104."  Your affiant is aware that the law enforcement database listed "[the Bellwood, IL address]" as Alarcon's address as of July 27th, 2015 and that multiple

ALARCONs are listed as currently living at this address (believed to be ALARCON's family based upon training and experience).

Based upon the above listed facts and observations, your affiant believes the following: Alarcon departed Minnesota on August 20th in a Honda Ridgeline with [license] and arrived in Arizona on August 21st, 2015.  Based upon the time it took to depart and arrive, Alarcon drove almost nonstop with the exceptions for food and fuel.  Multiple vehicles utilized by this DTO have made identical trips from Minnesota to Arizona almost every three weeks.  Law enforcement Officers observed Alarcon and Estudillo prepare the above listed vehicle for a lengthy trip with the intentions of making sure the vehicle was in proper working order so as not to draw the attention of law enforcement.

Your Affiant believes that with the assistance of GPS latitude and longitude data provided by Alarcon's phone (708-548-8023) coupled with the knowledge of what vehicle to look for (Honda Ridgeline with [license]), your Affiant will be able to stop and interdict ALARCON and this vehicle upon their return to Minnesota in the upcoming days.  This interdiction will allow for the seizure of large amounts of crystal methamphetamine and prohibit their sales and distribution in the Twin Cities.

(*Id.* at 18-19).

As evident from the timing and content of the warrant affidavit, the warrant was issued by a Minnesota state court judge while the mobile phone that was the target of the warrant, *i.e.*, cellular phone 708-548-8023, was located in Arizona.  The warrant provided that it would "remain in effect for sixty (60) days from issuance or unless otherwise advised by an investigator with interest [in the case]."  (*Id.* at 2).  It was implemented with the cooperation and technical assistance of the service provider, Sprint Spectrum LP.  Task force officers fully intended to execute the warrant and obtain location information before the mobile

phone re-entered Minnesota, and indeed, that is what occurred.  (Hr'g Tr. 5).

**ANALYSIS**

> **Probable Cause.**  The parties here do not dispute that the warrant must
be supported by probable cause to be lawful under the Fourth Amendment.  *See
e.g. Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012).  A warrant is
properly issued if the evidence as a whole creates a reasonable probability that
evidence will be discovered in the search.  *United States v. Smith*, 266 F.3d 902,
904 (8th Cir. 2001) (citing *United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir.
1998)).  The task of the issuing court is "simply to make a practical, common-
sense decision whether, given all the circumstances, ... there is a fair probability
that contraband or evidence of crime will be found in a particular place."  *United
States v. Ross*, 713 F.2d. 389, 393 (8th Cir. 1983) (quoting *Illinois v. Gates*, 462
U.S. 213, 238 (1983)).  Determining whether probable cause is established
entails a practical, common-sense evaluation of the totality of the circumstances.
*United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986).

> The district court does not conduct de novo review of the probable cause
determination on a motion to suppress.  *Id.* at 959.  The reviewing court is to give
substantial deference to the issuing court's probable cause determination.  *United
States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008).  Indeed, the reviewing
court does not examine the affidavit to determine whether probable cause is
stated, but rather, must determine whether the issuing court had a substantial

basis to conclude that probable cause existed at the time of issuance.  *United States v. Anderson*, 933 F.2d 612, 614 (8th Cir. 1991).

As noted earlier, the warrant affidavit here contains a detailed description of the DTO distribution operations and activities, including CRI identification of Alarcon and other named persons as methamphetamine distributors.  The CRI described the DTO's system for moving methamphetamine from Mexico to Figueroa for distribution in Minnesota, and the CRI described efforts to recruit him into the Figueroa, and subsequently, the Hernandez drug operations. The affidavit includes substantial surveillance information regarding the ownership, use, and location of specified vehicles which were known to be used by the DTO in transporting drugs.  Evidence in the affidavit that was particular to Alarcon included observation of him preparing for a long trip, traveling on a route that took him out of Minnesota, and subsequent observation of his vehicle in Arizona the next day.  The preparation and travel were consistent with known patterns of preparation and travel used by the DTO to obtain drugs at approximately three-week intervals.  (Doc. No. 179 at 18).  Also, the affidavit provides a connection between criminal activity in Minnesota, the transportation of drugs between Arizona and Minnesota, and movements of Alarcon's vehicle in conformity with known DTO drug transporting practices.

Considering the totality of the circumstances described in the warrant affidavit that was presented to the state court judge, and giving deference to the

state court's determination that there was probable cause to support issuance of the tracking warrant, this court concludes that the issuing court had a substantial basis on which to determine that probable cause existed. *Anderson*, 933 F.2d at 614. Substantial information regarding the DTO was provided by an informant whose reliability had been shown through prior information that led to arrests and seizure of drugs and money. (*Id.* at 8). The CRI specifically identified Alarcon by photograph as a person involved in the Figueroa methamphetamine distribution operation. (*Id.*) Substantial particularized information regarding the DTO was provided by the CRI, and this information, including Alarcon's connections with persons involved in the DTO, was corroborated through surveillance. Under these circumstances this court concludes that the warrant was not issued in violation of the Fourth Amendment and that suppression of cell phone tracking evidence is not required.

**Warrant Authority.** As was noted previously the question is raised in this case as to whether the state court judge in Minnesota had authority to issue a warrant that would allow law enforcement officers to obtain real-time location information for a cell phone that was believed to be in Arizona when the warrant was signed, and further permitted continuous access to the location of the cell phone as it traveled through several states through the use of technology that permits the cell phone service provider to locate the cell phone by determining the phone's proximity to cell phone towers or by pinpointing location through GPS

10

measurement.

Although Alarcon acknowledges that there is no territorial limit in the Minnesota statute that authorizes cell phone tracking allowing "access to location information" of an electronic device, he argues that the territorial limitations that apply to warrants for the installation of mobile tracking devices, such as a beeper installed on a vehicle, should also limit the authority of the state court to issue cell phone location warrants.[2]  However, Alarcon misconstrues some clear distinctions between cell phone tracking addressed by § 626A.42 and mobile device tracking that is the subject of § 626A.37.[3]  Mobile device installation as

_____

[2] Minn. Stat. § 626A.37 provides:

Subd. 1.  Upon an application made under section 626A.36, the court may enter an ex parte order authorizing the installation and use of a pen register, trap and trace device, or mobile tracking device within the jurisdiction of the court if the court finds on the basis of the information submitted by the applicant that there is reason to believe that the information likely to be obtained by the installation and use is relevant to an ongoing criminal investigation.

Subd. 5.  A warrant or other order for a mobile tracking device issued under this section or other authority may authorize the use of a mobile tracking device within the jurisdiction of the court and outside of that jurisdiction as long as the device is installed in the jurisdiction.

Minn. Stat. § 626A.39, subd. 5 defines a mobile tracking device as:

... an electronic or mechanical device that permits the tracking of the movement of a person or object.

[3] Both the government and the defendant have mis-cited this statute as Minn. Stat. § 626A.35 in their supplemental memoranda.

anticipated in § 626A.37 is a physical intrusion, however slight, that can be commenced at a known time and location.  On the other hand, law enforcement authorities can rarely know the precise location of a cell phone when tracking begins, and cannot not know the path that will be taken by the cell phone user. Indeed, that is the purpose of the tracking.  Alarcon suggests, however, that "as a matter of state and federal constitutional law, the local district judge has no jurisdiction to issue a warrant, as here, for a search that was to be executed out of state."  (Doc. No. 188, Def. Mem. 3).

As his constitutional argument for the limitation on the state judge's authority to issue the warrant, Alarcon asserts that the Fourth Amendment prohibition against unreasonable searches should be considered in light of federalism principles under the Tenth Amendment.  (*Id.* at 4).  Thus, he argues that the general police power under which warrants are issued and executed extends only over subjects within the territorial limits of the states, *citing Prigg v. Pennsylvania*, 41 U.S. (16 Pet.) 539, 625 (1842), and a warrant which does not recognize this limitation is unreasonable under the Fourth Amendment. (Def. Mem. 4-5).  Alarcon analogizes the limits of a state court judge's power to issue warrants for searches to be conducted outside the territorial limits of the state to the limits on the authority of United States Magistrate Judges under Fed. R. Crim. P. 41(b)(1) to issue warrants for execution in the district in which the magistrate judge serves.  And he contends that a violation of this type of extra-territorial

limitation on warrants is a fundamental violation of such limits on judicial authority, requiring suppression of evidence, and is not a mere technical violation. *See United States v. Glover*, 736 F.3d 509, 515 (D.C. Cir. 2013) (holding that is was not a mere technical violation for a magistrate judge to authorize installation of an audio recording device in a vehicle that was known to be located outside the judge's district); *see also United States v. Krueger*, 809 F.3d. 1109 (10th Cir. 2015) (holding that Rule 41 was violated and suppressing evidence obtained as a result of a physical search of a residence in Oklahoma pursuant to a warrant issued by a magistrate judge in Kansas); *but see  United States v. Vann*, No. 07-247 JMR/RLE, 2007 WL 4321969 (Dist. Minn. Dec. 6, 2001) (finding that a violation of the Rule 41 territorial limitation was not a fundamental violation requiring suppression) (citing *United States v. Freeman*, 897 F.2d 346, 348-49 (8th Cir. 1990)).

Here, however, the warrant was not issued by a federal magistrate judge subject to explicit Rule 41 limits, and the warrant did not authorize a physical intrusion on property as in *Glover* and *Krueger*.  The state warrant for cell phone tracking was authorized under a Minnesota statute, and limitations on the authority of the issuing judge are established as a result of the requirement under § 626A.42, subd. 2 that a tracking warrant be issued only on a showing of probable cause that the person possessing the electronic device is engaged in criminal activity within the jurisdiction of the issuing court.  As this court stated in

13

previous discussion of probable cause evidence contained in the warrant affidavit, a CRI provided particularized evidence of crimes being committed in Minnesota, including delivery of methamphetamine in a controlled drug transaction (Doc. No. 179-1 at 13).   The CRI also gave extensive and detailed information on DTO operations in Minnesota.   A nexus between Alarcon and criminal activity in Minnesota was established by the CRI's statements that Alarcon was involved in methamphetamine sales in Minnesota and a vehicle registered to him was observed at a known drug stash house in Minnesota. There was probable cause to believe that Alarcon was in the process of transporting illegal drugs to Minnesota.   He was observed in Minnesota preparing the vehicle for long distance travel and proceeding on a route consistent with such travel.   (*Id.* at 16-17).   The same vehicle was observed the next day in Arizona and the time pattern was consistent the DTO's history of transporting illegal drugs from out-of-state to Minnesota.   Under the circumstances here, the reasonableness requirement of the Fourth Amendment is satisfied and there is no Tenth Amendment violation of federalism principles.[4]

---

[4] Both parties in this case presented argument on this suppression motion as a Fourth Amendment probable cause issue.   Courts in this district have likewise considered suppression of real-time cell phone tracking warrant evidence as a probable cause issue.   *See United States v. Moore*, No. 15-116 DWF/JSM, 2015 WL 8779926, *3-4 (D. Minn. Dec. 15, 2015) (suppressing tracking warrant evidence due to lack of probable cause and lack of good faith).   This is the approach taken here.   Other courts have held that there is no expectation of privacy in real time location data revealed by a cell phone to justify suppression of evidence on Fourth Amendment grounds.   *See United States v. Skinner*, 690

**CONCLUSION**

Suppression of evidence obtained as a result of law enforcement officers' ability to track defendant Alarcon's location and movements through cellular telephone tower location technology, as authorized pursuant to a warrant issued by a Minnesota state district court judge (Hr'g Ex. 1), is not required.  The warrant properly and adequately identifies the cell phone that is the subject of the warrant and describes evidence that may be obtained pursuant to the warrant.  The warrant affidavit further provides probable cause evidence that is sufficient to satisfy Fourth Amendment requirements.

Based on the foregoing Findings and Conclusions, this Court makes the following:

**RECOMMENDATION**

It is **Hereby Recommended** that defendant Ramon Rafael Alarcon's Motion to Quash Warrant and Arrest and to Suppress Evidence be **DENIED**. (Doc. No. 179).


Dated:   April 26, 2016

 s/*Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge

_____

F.3d 772, 777-79 (6th Cir. 2012) (holding that there is no expectation of privacy as to information that could have been obtained by visual surveillance and distinguishing *United States v. Jones*, 132 S.Ct. 945 (2012) (finding that the trespassory nature of placing a tracking device on a vehicle did implicate the Fourth Amendment)).

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 10, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.